

May 22, 2023

**VIA E-FILING**
The Honorable Jennifer L. Hall
J. Caleb Boggs Federal Building
844 N. King Street
Unit 17, Room 3124
Wilmington, DE 19801

Re: *Starz Entertainment, LLC v. VideoLabs, Inc.*, C.A. No. 21-cv-1448-JLH

Dear Judge Hall:

VideoLabs asks the Court to order Starz to produce: (1) specifically identified source code; (2) documents identified in already-produced documents; and (3) missing email attachments and embedded email content. VideoLabs also seeks a protective order against Starz's Rule 30(b)(6) topics relating to: (4) VideoLabs' contentions; and (5) litigation funding.

### 1. Starz Refuses to Provide Relevant Source Code

Starz refuses to make available several categories of source code for its Over-The-Top ("OTT") streaming service (the accused product). Starz does not dispute the code's relevance or allege undue burden in producing the code. Yet, Starz continues to withhold the requested code.

The categories of missing code are: (1) Auth Service code; (2) DataAPIService code; (3) ScheduledItemsService code; (4) Pre_Roll_Scheduling code; (5) encoding-process and SQSManager code directories;[1] (6) API code for responding to search queries (including Metadata API and Content Delivery API code); and (7) code responsive to metadata queries from the clients (for example, responsive to https://playdata.starz.com/metadata-service/play/partner) (collectively the "Missing Code"). Starz is obligated to produce relevant code for its OTT streaming service. D.I. 18 ¶6(a); *see, e.g.*, Ex. A at 16 (Request 8), 18. Code is discoverable if it "is reasonably likely to lead to evidence relevant to [the] infringement claims." *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, 2010 WL 2898288, at *1 (D. Del. July 20, 2010); Fed. R. Civ. P. 26(b)(1). The Missing Code shows how the accused product works and Starz has not disputed its relevance.[2] Nor is there any undue burden, as VideoLabs identifies specific and targeted categories of code.

Starz's proffered reasons do not justify its failure to produce the Missing Code. Starz initially claimed that the Missing Code was already produced.[3] But VideoLabs confirmed it was

---

[1] Starz made available folders for the Pre_Roll_Scheduling, encoding-process and SQSManager directories, but each is incomplete and contains only a handful of files.

[2] *See, e.g.*, Ex. B at 5-7 (PlayAuth (another name for the Auth Service), the "Metadata API," and the "Content Delivery API"), 29 (controlling pre-roll videos), 33 (discussing "PlayData" code), 36 (metadata queries); Ex. C at 12 (Content Delivery API); Ex. D at 1 ("Pre-Roll Scheduling CMS Information"); Ex. E ("ScheduledItemService"); Ex. F at 1 (encoding and SQS manager).

[3] Starz initially refused to provide the basis for its claim. Ex. G at 3; Ex. H at 7. On a recent meet and confer, Starz referenced a handful of produced code files that include terms shared with the names of the Missing Code (e.g., they include the term "Auth"). As VideoLabs explained, the identified files might interact with the Missing Code, but they are not the Missing Code. If Starz contends the Missing Code is already produced, it should be compelled to specifically identify it.

not—which is supported by Starz's recent abandonment of its argument. Ex. G at 7-8, 3 (claiming the code was provided); Ex. H at 3 (reversing course).

Starz pivoted to arguing that VideoLabs' requests are "in fact[] a new set of requests for source code." The written record shows otherwise. VideoLabs first requested the Missing Source Code on January 31 and March 13. Ex. I at 2 ("Source code for the DataAPIService" and the "Source code for the ScheduledItemsService" (which is part of the Pre_Roll_Scheduling)), 3-4 ("Metadata API" and "Content Delivery API"); Ex. G at 12. VideoLabs repeated its requests multiple times after that, often verbatim. Ex. G at 11-12, 6-7, 8-9, 5-6, 4-5, 3, 1; Ex. H at 6-7. Most recently, Starz contended that the Missing Code is duplicative, but by its nature, unproduced code packages are not duplicative of already-produced code.

**2. Starz Refuses to Produce Specifically Identified Documents**

VideoLabs has identified unproduced documents referenced in several of Starz's produced documents (the "Missing Documents") and asked that Starz produce them. Ex. J. The Missing Documents are relevant to VideoLabs' infringement claims and responsive to its requests, yet Starz has refused to produce them.

STARZ-VL 0000018903 discusses making uncompressed video and audio files streamable using the streaming protocols HLS and DASH—the functionality VideoLabs accuses of infringing. Ex. K. That document also references "documentation [] located in the Shared links section." *Id.* Given the content of the underlying document, the referenced documents are likely to be relevant. Similarly, STARZ-VL 0000000164 concerns the accused functionalities "continue watching" and "auto rollback." *See* Ex. L at 1. The document has a link to "Related articles" that have not been produced. *Id.* at STARZ-VL 0000000217. These related articles likely further explain how the accused features operate. The same is true for the other Missing Documents. *See e.g.*, Ex. M at STARZ-VL 0000000220 (discussing AutoRoll feature, linking to related documents, and showing related presentations); Ex. N (referencing "Callahan/Android Packaging Workflow" page); Ex. R at 2 (referencing "MidnightExpress-Conductor.pptx"). The Missing Documents are responsive to VideoLabs' document requests. Ex. A (Request 35); Ex. O (Requests 101-102, 119).

**3. Starz Refuses to Provide Email Attachments and Embedded Email Content**

Starz produced about 16,000 emails in an archived format that removes attachments and embedded images. As a result, VideoLabs has been deprived of many relevant documents (the attachments), and the emails themselves are of limited utility. The reason for the deficient production appears to be that Starz did not de-archive these emails before producing them (but could have). *See* Ex. Q ("This message has been archived. View the original item.").

The Default Standard for Discovery sets forth the format in which documents must be produced, and requires the producing party to "preserve the integrity of the underlying ESI" when producing emails. *See* Ex. S at ¶5(c). This includes preserving the "original formatting" of emails. *Id.* Further, "courts [] have held that emails produced in discovery should be accompanied by their attachments[.]" *See Virco Mfg. Corp. v. Hertz Furniture Sys.*, 2014 WL 12591482, at *5-6 (C.D. Cal. Jan. 21, 2014) (collecting cases); *see also vMedex, Inc. v. TDS Operating, Inc.*, 2021 WL 4709978, at *1 (D. Del. Oct. 8, 2021) (John W. Shaw, Special Master) ("Default Standard ¶5(e) likewise requires that electronically stored documents, such as email, be produced with familial information to connect a primary document with its attachments."). Starz refuses to cure its production and comply with the Default Standard and applicable case law. As things currently stand, Starz "has effectively redacted" responsive discovery. *Id.* at *5.

The original emails are necessary to make sense of the already-produced archived emails. For example, in STARZ-VL 0000039881, Starz employees discuss the "the Cloud Front

settings"—which are relevant to how Starz provides media content—by referencing an embedded image and attachments. Ex. P. Without the relevant embedded image and attachments, the produced email is near useless. The same is true for numerous other emails. *See, e.g.*, Ex. Q (STARZ-VL 0000065213) (discussing Starz's accused auto-roll functionality and referencing five unproduced attachments). Any burden to Starz is a direct result of its failure to properly produce documents in the first instance, and is not a valid basis to deprive VideoLabs of relevant discovery.

### 4. Starz's Contention Deposition Topics Are Improper

It is black letter law in this District that contention topics are improper. *See* Ex. T; Ex. U, at 14 ("It has been the consistent position of this Court that a lay person shouldn't be required to formulate a party's contention in response to deposition questioning and that not even a lawyer should be required to formulate trial strategy and contentions in immediate response to questions on deposition."). Despite this, Starz has refused to withdraw five such topics. Ex. V (Topics 6-7, 39, and 63-64). All these topics seek improper contention testimony, as they target subject matter that implicates expert opinion and attorney work product. Moreover, due to their extraordinary breadth and sensitive nature, these topics would place an undue burden on VideoLabs to prepare a witness to address them. In particular, these topics seek testimony about VideoLabs' infringement theories, claim construction positions, damages theories, position on the level of ordinary skill in the art, and, most egregiously, VideoLabs' claims for relief. *Id.*

Courts in this District routinely refuse to compel parties to provide corporate witnesses to testify about these kinds of topics. *IBM v. Priceline,* 2016 WL 6305981, at *2 (D. Del. Sept. 29, 2016). That some of these topics are drafted to focus on the facts underlying VideoLabs' contentions does not save them. *See* Ex. W, *Guest Tek Interactive Entm't, Ltd. v. Nomadix, Inc.*, No. 18-1394-RGA, D.I. 212, at 1-2 (D. Del. Dec. 18, 2020) (finding that topics concerning the facts about a party's contentions "are still essentially contention deposition topics"); *see also* Ex. X at 5 (list of topics). VideoLabs accordingly requests a protective order.

### 5. Litigation Funding-Related Testimony Is Irrelevant and/or Work Product

VideoLabs already informed Starz that it "has never entered into any agreement with any third party to fund the present litigation." Ex. Y at 2. Unsatisfied, Starz seeks incredibly broad corporate testimony about anything even remotely related to litigation funding—potentially including VideoLabs' financial arrangement with its counsel. Ex. V (Topics 26, 28, 29, 77, and 80, which include "All facts, Documents, and Communications concerning every person and/or entity with any financial interest in the outcome of this litigation[.]"); Ex. Z; Ex. AA at 1; Ex. H at 3. Starz does not seek to compel VideoLabs to produce documents or answer interrogatories related to litigation funding; Starz only seeks corporate testimony on this issue. *See* Ex. AB.

This Court has already made its position known on litigation funding agreements and related documents and communications—they are irrelevant and/or protected by the work product doctrine. *Elm 3DS Innovations LLC v. Samsung Elecs. Co.*, No. 14-1430-LPS, D.I. 372, at 1-2 (D. Del. Nov. 19, 2020) (J. Hall) (Ex. AC). Starz has not identified any special circumstances that would justify departing from this well-reasoned position. The burden of preparing a witness to testify about Starz's broad litigation funding-related topics is another reason to grant VideoLabs' requested protective order on Starz's fishing expedition. *See IBM*, 2016 WL 6305981, at *2.

3

        Respectfully submitted,

        /s/ Michael J. Farnan

        Michael J. Farnan

cc: Counsel of Record (Via E-Mail)