Kelly E. Farnan
302-651-7705
farnan@rlf.com



May 26, 2023

**BY CM/ECF**
The Honorable Jennifer L. Hall
United States District Court
844 North King Street
Wilmington, DE 19801

**PUBLIC VERSION**

Re:   *Starz Entertainment, LLC et al. v. VL Collective IP, LLC, et al.*, C.A. No. 21-1448-JLH

Dear Judge Hall:

Starz has already satisfied its discovery obligations by producing source code files and over 300,000 documents in response to VideoLabs' ("VL") ever-expanding discovery requests.  As the Court may recall from its denial of VL's prior motion to compel, Starz timely produced 20,000 source code files and worked with its document custodians to manually identify and produce relevant documents.  That didn't satisfy VL, so Starz allowed VL to design and select an unlimited number of search terms—which Starz ran and, at great expense, produced over 300,000 documents.  D.I. 162, p 2.  VL then took the position that its search terms yielded such a large production that it needed another extension of the discovery period so it could review the documents and prepare for depositions.  D.I. 155.  Starz reluctantly agreed to VL's extension in an effort to avoid burdening Court with motion practice, but that deal included a promise that VL would not use the extended discovery period to issue new discovery requests.  Ex. A.  However, VL is now back to filing more discovery motions, which seek the production of even more documents.  VL has also issued extremely burdensome subpoenas to third parties (e.g., it's demanding source code production from Apple, Microsoft and others—based on an undisclosed theory that Starz is somehow liable based on the functioning of products like Apple's iPhone).  And it recently breached its agreement not to issue new discovery requests, by serving more interrogatories and requests for admissions to Starz on May 24, 2023.

To be sure, VL is engaged in a fishing expedition.  VL is seeking highly burdensome and expensive discovery without any effort to focus on issues that are important in this case.  Indeed, at a recent meet and confer concerning VL's 84 30(b)(6) deposition topics, Starz pointed out the challenges with preparing witnesses on so many broad topics and suggested the parties streamline their respective 30(b)(6) notices to focus on the most important issues.  VL rejected this request and provided no reasonable alternative.  So, this motion will not be the last.  VL has already revealed a primary goal of its depositions will be to lay a foundation for more discovery motions.  Ex. B.

Indeed, this is the third discovery dispute motion filed since March--but, in that time, VL has done nothing to move this case forward in a productive way.  It has not even attempted to review Starz's source code since March 29, 2023, and it has repeatedly delayed depositions.  No matter how many documents Starz has produced, and the lengths Starz has gone to in an effort to compromise with VL, it appears that no amount of discovery will satisfy VL.

Ironically, VL's opening letter ignores that it has failed to meet its own basic discovery obligations.

The Honorable Jennifer L. Hall
May 26, 2023
Page 2

For example, VLs third amended infringement contentions still fail to: identify accused instrumentalities, state how each accused instrumentality meets each limitations, and properly disclose its induced infringement and doctrine of equivalents theories. Ex. C. VL has refused to answer interrogatories concerning matters on which it has the burden of proof. Ex. D, pp 17-19. VL has not completed its own document production. VL refused Starz's request that it run search terms. VL withheld thousands of pages of documents until after the close of document discovery (it produced 7,000 pages 48 hours before its 30(b)(6) deposition was scheduled, necessitating the deposition's rescheduling). And, VL refuses to say when its production will be complete.

**VL already has the source code it seeks**[1]. VL does not reveal that Starz has produced over 20,000 source code files and a manifest of the source code and has supplemented its production on multiple occasions in efforts to resolve VL's threatened discovery motions. Nor does VL inform the Court that: (i) Starz first advised VL that it would make its code available on July 19, 2022; (ii) nevertheless, VL did not send its expert to review the source code until January 31, 2023; (iii) in February and March 2023, VL and its expert inspected the source code on at least five separate days, and (iv) since March 29, 2023, VL has not had its expert go back and review the code to confirm whether VL's ongoing claims of source code deficiencies have merit. In any event, Starz took VL's claims of missing code seriously. Starz's counsel conferred (once again) with the relevant Starz employees concerning the allegedly "missing code," and the employees explained that the already-produced files contain everything Starz has that may be responsive to VL's requests. And, to avoid doubt, the manifest that Starz produced[2] *shows* that the code made available for inspection includes the alleged "categories of missing code." VL's claim of code production deficiencies are baseless.

VL tries to address these inconvenient facts through a conclusory statement that the code files produced by Starz are "incomplete and contain[] only a handful of files." D.I. 183, n. 1. But VL offers no explanation what it means by this, how it knows the files are supposedly incomplete, or which specific files are missing. For example, VL does not explain why the source code Starz located for VL is not the alleged "missing code." Compare D.I. 173, p 1 ("**Pre_Roll Scheduling** code"), *with* Ex. E ("C:\Users\CodeReview\Desktop\Source Code\SourceCode\AsReceived\20220616\z_CNTCode\z_CNTCode\pre_roll_scheduling\**pre_roll_scheduling**") (emphasis added). Nor does VL even attempt to argue why any of the supposed missing files are material and proportionate to the needs of this case.

**VL' documents requests are neither relevant or proportional**. As discussed above, in an extraordinary effort to resolve discovery disputes, Starz allowed VL to unilaterally devise the search terms Starz used in this case (even after Starz conducted a manual search for relevant

---

[1] VL argues that Starz claimed the code was produced and then abandoned that argument. D.I. 183, pp 1-2. This is a not true. Starz notified VL that the requests in VL's motion for teleconference were "a new set of requests" because they were not the same requests VL sent in prior emails. Compare D.I. 183, Ex. G at pp. 5-6, with D.I. 173.

[2] Starz will make the manifest available securely to the Court upon request. Attached as Exhibit E is a chart reflecting the "missing code" VL has alleged and source code file locations on the manifest.

The Honorable Jennifer L. Hall
May 26, 2023
Page 3

documents). Starz agreed that VL could choose more than the 10 terms provided for under this District's Default Standard for Discovery—and VL took advantage of Starz's offer, as it chose extremely broad search terms. Exhibit F. Starz then ran VL's search terms and produced over 300,000 documents that resulted. The reason Starz agreed to this unusually burdensome procedure, where VL could choose its own search terms, was to avoid this very situation—i.e., VL seeking even more documents in follow-up requests. For example, VL references certain "linked" documents within Exhibits K and L that it claims are "likely" relevant. But, if those documents are relevant they would already be captured by VL's extremely broad search terms. VL ignores that there are limits to discovery. For example, the "linked" or "embedded" documents in Exhibits K, L, Q and P appear to involve different custodians or repositories beyond those that were appropriately searched. This does not change the fact that Starz satisfied all of its disclosure and searching obligations. The mere possibility that another document may exist somewhere is not grounds to continue to expand discovery—especially at this late stage, when Starz has gone to such great lengths and VL offers no explanation why these other documents are non-cumulative and material to any issues. Toward this end, VL's speculation that the documents may "relate to" various accused functionalities is insufficient; VL already has the code and its search terms yielded an untold number of documents that describe the accused functionalities—there does not appear to be anything unique about these other "linked" documents.[3]

**Starz is entitled to testimony sought by Topic Nos. 6, 39, 63, and 64.** Topic No. 6 is relevant and discoverable because it seeks the factual bases concerning VL's infringement allegations. Topic No. 63 is relevant and discoverable because it concerns facts about the level of ordinary skill in the art. Topic Nos. 39 and 64 are relevant and discoverable because they seek factual information underlying VL's claims for damages and other relief, not legal contentions—as Starz made clear during the parties' meet and confer. Starz also notes that VL argues that "these topics would place an undue burden on VL to prepare a witness," while at the same time refusing to withdraw or narrow any of the 84 30(b)(6) topics it served on Starz.

**Litigation funding testimony bears directly on issues of credibility and bias.** For example, revealing whether prospective jurors or witnesses may be associated with a third-party funder is relevant. Additionally, fact-finders should know the extent to which witness testimony is be motivated by a financial interest. *See, e.g., DNT, LLC v. Sprint Spectrum, LP*, No. CIV.A. 3:09CV21, 2010 WL 582164, at *4 (E.D. Va. Feb. 12, 2010)). That concern is acute here, where there are questions as to how and by whom VL's expert witnesses are compensated. *See Greatbatch Ltd. V. AVX Corp.*, C.A. No. 13-723-LPS, 2015 WL 9171042, at *2 (D. Del. Dec. 11, 2015) (holding that the expert's "alleged bias may be explored during cross-examination."). As to VL's claim of privilege, Starz is hamstrung in substantively responding because VL refuses to disclose any information concerning the allegedly privileged documents and communications (e.g., whether they exist, which attorneys were involved, who received them, etc.)

---

[3] VL's complaint about "linked" and "embedded" documents also relates to its issue with "archived" documents. Certain documents Starz collected by applying search terms to its ten custodians make reference to other documents in the possession of different custodians. But those other documents have been archived and were not part of Starz's search term process. Nor did they need to be, given the ten custodians Starz did search as required by the Default Standard.

The Honorable Jennifer L. Hall
May 26, 2023
Page 4

                                Respectfully,

                                /s/ Kelly E. Farnan

                                Kelly E. Farnan (#4395)

cc:  All Counsel of Record (CM/ECF)

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 N. Market Street
12th Floor
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Christine E. Lehman
Reichman Jorgensen
Lehman & Feldberg LLP
1710 Rhode Island Ave NW
12th Floor
Washington, DC 20036

**BY ELECTRONIC MAIL**
Wesley L. White
Jaime F. Cardenas-Navia
Reichman Jorgensen
Lehman & Feldberg LLP
750 Third Avenue, Suite 2400
New York, NY 10017

**BY ELECTRONIC MAIL**
Taylor Mauze
Reichman Jorgensen
Lehman & Feldberg LLP
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735

**BY ELECTRONIC MAIL**
Jaime F. Cardenas-Navia
Reichman Jorgensen Lehman & Feldberg LLP
750 Third Avenue, Suite 2400
New York, NY 10017

*/s/ Nicole K. Pedi*
Nicole K. Pedi (#6236)
pedi@rlf.com